IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | |
|---|---|
| ALYSSIA HARMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-2281 |
| ) | |
| KANKAKEE COMMUNITY COLLEGE, and ) | JURY TRIAL DEMANDED |
| AMITA HEALTH d/b/a AMITA HEALTH ST. ) | |
| MARY'S HOSPITAL KANKAKEE, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Alyssia Harms, by her counsel Equip for Equality, and against defendants Kankakee Community College and AMITA Health d/b/a AMITA Health St. Mary's Hospital Kankakee states as follows:

### INTRODUCTION

1. This matter arises under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq.* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Section 504). Plaintiff Alyssia Harms (Harms) had successfully worked in the medical field as a certified nursing assistant and sought to further her knowledge and skills by training as an ultrasound technician. In June 2018, she enrolled in the Radiology Technician Program at Kankakee Community College (KCC). In mid-August 2018, KCC—as part of the curriculum—placed Harms at AMITA Health St. Mary's Hospital Kankakee (St. Mary's) for the clinical portion of her program. But neither St. Mary's nor KCC provided American Sign Language (ASL) interpreters or any other accommodation of her hearing disability for her clinical education. Harms was discriminated against because of her disability, did not receive reasonable accommodations, suffered interference with her rights, and was constructively discharged from the program because of her disability.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) to hear and decide claims under federal law.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all events giving rise to this action occurred within the Central District of Illinois and all the defendants reside there.

**PARTIES**

4. Plaintiff Alyssia Harms resides in Bloomington, McLean County, Illinois. Harms has been deaf since birth. She communicates using ASL, but also utilizes lip-reading, and spoken and written English. Harms' deafness is a disability as defined by the ADA, 42 U.S.C. §§ 12102(1)(A) and (2)(A), because she is substantially limited in the major life activity of hearing.

5. Harms is a "qualified individual" under the ADA, 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104, because, with reasonable modifications to rules, policies, or practices; the removal of communication barriers; and the provision of auxiliary aids and services, she meets the essential eligibility requirements for the receipt of services or the participation in programs or activities operated by the defendants.

6. Defendant Kankakee Community College (KCC) is a community college located in Kankakee, Kankakee County, Illinois, part of the Illinois Community College System under the Public Community College Act, 110 ILCS 805.

7. KCC is a "public entity" under Title II of the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104, and a "department, agency, special purpose district, or other instrumentality of a State" and a "college, university, or other postsecondary institution, or a public system of higher education" under 29 U.S.C. §§ 794(b)(1)(A) and (2)(A).

8. Defendant AMITA Health St. Mary's Hospital (St. Mary's) is a not-for-profit health care center located in Kankakee, Kankakee County, Illinois. St. Mary's is operated by AMITA Health, a joint operating company headquartered in Chicago, Illinois.

9. St. Mary's is a "hospital" and "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education" under Title III of the ADA, 42 U.S.C. § 12181(7)(F) and (J).

10. Both defendants operate, for relevant purposes, a "program or activity receiving Federal financial assistance" under Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794(a).

### STATEMENT OF FACTS
### COMMON TO ALL COUNTS

11. Harms is a certified nurse assistant with a successful career working in nursing homes, and who had ambitions of becoming an ultrasound technician. In June 2018, she left her full-time job at a nursing home to enroll in the Radiology Technician Program at KCC.

12. Before enrolling, Harms disclosed her disability to and requested accommodations from KCC's Office of Disability Services, which approved her accommodations request and agreed to provide her with ASL interpreters, extended time on exams, note takers, tutoring, closed captioning on all videos, and seating in the front of classes.

13. For June, July, and part of August, the program was in the classroom only. Harms was provided with an ASL interpreter. She maintained an average that was well within the acceptable range for the program and excelled in some very important subjects, such as anatomy.

14. In mid-August 2018, Harms began the clinical portion of her program. KCC placed her at St. Mary's. On the first day of her clinical training, Harms was provided an ASL interpreter, but thereafter she was not provided with any accommodations.

15. On October 16, 2018, Harms first learned that KCC faculty purportedly had concerns about her hearing loss, pronunciation of certain words, and other inability to communicate in her clinical program.

16. On October 19, 2018, in response to these concerns, Harms sent two emails to KCC faculty proposing several options for communication access. In one email, Harms requested that she once again be allowed an ASL interpreter, noting that—even time-limited to a month or so—an interpreter would help her enormously. In another email, Harms suggested other ways to support communication, including a mobile application; note writing; having staff speak slowly to allow her to lipread; and/or staff using clear face masks so that she could lipread.

17. To her emails, KCC responded only that it would check with St. Mary's regarding whether an ASL interpreter would be allowed. KCC thereafter told her that neither KCC nor St. Mary's would provide an ASL interpreter for her clinical setting and that St. Mary's would not even allow an interpreter to be present, citing patient confidentiality (despite that ASL interpreters are regularly used in confidential healthcare settings, and interpreters are bound by confidentiality). Neither KCC nor St. Mary's addressed Harms' other suggested accommodations.

18. On October 24, 2018, Harms met with KCC faculty, who recommended that she be removed from the program because her disability supposedly presented too many challenges. KCC failed to acknowledge the accommodations and auxiliary aids and services requested by Harms. Instead, the faculty gave Harms three "options": (1) continue the clinical program, but at a more remote hospital than St. Mary's, with no commitment by KCC that it would provide an interpreter or other accommodations (and so far away that it would be difficult to even find an ASL interpreter); (2) withdraw from both the program and KCC and apply for a refund; or (3) withdraw from the program and meet with a career advisor at KCC to explore other careers.

19. Faced with these options, none of which offered a path to becoming an ultrasound technician, Harms chose to withdraw from the program and the College. She applied to the College's president for a tuition refund, which was denied on November 12, 2018.

20. Defendants acted with deliberate indifference to Harms' statutory rights, aware that the ADA and the Rehabilitation Act explicitly required that they provide auxiliary aids and services—including ASL interpreters—and yet knowingly failing to provide them or any other accommodation, while also failing to enter into a good-faith interactive process with Harms.

21. Harms has suffered damages including but not limited to the loss of her tuition, loss of employment advancement and opportunities, other pecuniary harm, and emotional distress.

## VIOLATIONS OF LAW

### COUNT I:
### ADA Title II (Against KCC)

22. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

23. Plaintiff was qualified to perform the clinical portion of her program with accommodations, especially with an ASL interpreter or other auxiliary aids and services.

24. KCC violated 42 U.S.C. § 12132 and 28 C.F.R. § 35.130 because Harms by reason of disability was "excluded from participation in or [] denied the benefits of services, programs, or activities of a public entity, or [] subjected to discrimination by any such entity."

25. In particular, and without limitation, KCC:

(i) Failed under 28 C.F.R. § 35.160(a)(i) to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others"; *and*

(ii) Failed under 28 C.F.R. § 35.160(b)(i) to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including

applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."

26. Under the ADA, auxiliary aids and services specifically include "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103(a)(1). *See also* 28 C.F.R. § 35.104.

27. Thus, KCC both failed to reasonably accommodate Harms and discriminated against her because of her disability in the clinical part of her training by, without limitation, (1) failing to provide accommodations (including auxiliary aids and services) during the clinical program, and (2) constructively terminating her from the program by not providing accommodations and giving her only a nominal choice between a more remote clinical program (for which there were no guarantees of accommodations) or withdrawing from the Radiology Technician Program altogether. Harms brings her claim under 42 U.S.C. § 12133 (incorporating the procedures of 29 U.S.C. § 794a).

## COUNT II:
## ADA Title III (Against St. Mary's)

28. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

29. St. Mary's discriminated against Harms by causing her to be removed from the clinical program and, thereby, also causing KCC to remove her from the Radiology Technician Program, in violation of 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

30. St. Mary's subjected Harms, "on the basis of disability," to a "denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity" in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202(a).

31.    St. Mary's violated specific prohibitions proscribed by 42 U.S.C. § 12182(b)(2)(A) (as well as 28 C.F.R. § 36.302(a)):

"(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

"(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

32.    St. Mary's failed to "take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," 28 C.F.R. § 36.303(a), including the auxiliary aids specified in 28 C.F.R. § 36.303(b)(1) for "making aurally delivered information available to individuals who are deaf or hard of hearing."

33.    St. Mary's also violated 42 U.S.C. § 12189 (and 28 C.F.R. § 36.309), requiring that a "person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

34.    St. Mary's failed to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities" under 28 C.F.R. § 36.303(c)(1). It offered the clinical portion of a course yet failed under 28 C.F.R. § 36.303(c)(3) to "provide appropriate auxiliary aids and services for persons with impaired sensory, manual, or

speaking skills … includ[ing] … interpreters or other effective methods of making orally delivered materials available to individuals with hearing impairments."

35. Thus, for the above-stated reasons, St. Mary's both failed to reasonably accommodate Harms and discriminated against her because of her disability. Harms brings this claim under the procedures of 42 U.S.C. § 12188(a) and 28 C.F.R. § 36.501(a).

## COUNT III:
### ADA Title V (Against St. Mary's)

36. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

37. 42 U.S.C. § 12203(b) makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

38. By refusing without justification to accommodate Harms or even engage in a good-faith interactive process, St. Mary's interfered with Harms' exercise or enjoyment of participation in KCC's Radiology Technician Program with the accommodations that KCC did provide in the classroom and could have offered at the hospital. Harms brings this claim under 42 U.S.C. § 12203(c) (incorporating the procedures of 42 U.S.C. § 12188(a)).

## COUNT IV:
### Rehabilitation Act Section 504 (Against KCC and St. Mary's)

39. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

40. Defendants violated Section 504, 29 U.S.C. § 794(a), by excluding Harms "solely by reason of … her disability … from the participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial assistance." Because Section 504 incorporates the standards of the ADA, this includes all allegations (without limitation, discrimination and denial of accommodations) made above in Counts I–III. Harms bring this claim under the procedures of 29 U.S.C. § 794a(a)(2).

## PRAYER FOR RELIEF

41.     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants KCC and St. Mary's, and order *inter alia* reinstatement, economic loss damages, emotional distress damages, compensatory damages, pre- and post-judgment interest, attorney's fees and costs, and any other relief this Court deems may be just and proper.

## JURY DEMAND

42. PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.

        Respectfully submitted,

        */s/  Paul W. Mollica*

        Paul W. Mollica (Bar No. 6194415)
        Laura J. Miller (Bar No. 6202721)
        Equip for Equality
        20 N. Michigan Ave., Ste. 300
        Chicago, Illinois 60602
        Telephone: office 312-341-0022
        direct 312-895-7350

        ATTORNEYS FOR PLAINTIFF